IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARGORIE D. LAWRENCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:10-CV-133-MEF |
| | ) | |
| CHRISTIAN MISSION CENTER | ) | |
| INC. OF ENTERPRISE d/b/a | ) | (WO-DO NOT PUBLISH) |
| NEW LIFE CHRISTIAN RECOVERY | ) | |
| PROGRAM | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on Defendant Christian Mission Center Inc. of

Enterprise, d/b/a New Life Christian Recovery Program's ("Christian Mission") Motion

to Dismiss (Doc. # 23), filed April 5, 2010.  Plaintiff Margorie Lawrence ("Lawrence")

filed suit against her former employer Christian Mission on the basis of alleged sex

discrimination.  (Doc. # 22).  Christian Mission seeks dismissal of five of Lawrence's six

claims.  (Doc. # 23).  The Court heard oral argument on this Motion on August 18, 2010.

For the foregoing reasons, that Motion is GRANTED in part and DENIED in part.

## I.  JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§

1331, 1343, and 1367. The parties do not assert that this Court lacks personal jurisdiction

over them, and there is no dispute that venue is proper pursuant to 28 U.S.C. § 1391(b).

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  Therefore, for the purposes of adjudging a Rule 12(b)(6) motion to dismiss, the Court will accept as true all well-pleaded factual allegations and view them in the light most favorable to the plaintiff.  *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).

While  Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," as a general matter, to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559.  It is not sufficient that the pleadings merely leave "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.*  at 561 (internal quotation and alteration omitted).

## III.  FACTUAL AND PROCEDURAL BACKGROUND

The following facts are culled from Lawrence's Complaint and are taken as true,

as required on a motion to dismiss.  *See Pielage*, 516 F.3d at 1284.  Christian Mission is a live-in facility for recovering drug addicts and alcoholics which provides a structured, alcohol and drug free environment during the first year of recovery.   (Doc. # 22 ¶ 10–11). Lawrence, a professional counselor, was hired by Christian Mission on June 15, 2008 to counsel its residents.  *Id.* ¶ 5–7.  Christian Mission told Lawrence that she had been hired in part to counsel female residents, because as a female herself, she might be able to form better relationships with them.  *Id.* ¶ 8.  In reality, Lawrence began counseling a group of thirty male residents.  *Id.* ¶ 15.

On October 15, 2008 when a resident announced to Lawrence, in front of a group of other residents, that "they are saying we are fucking in _____'s office and that you gave me a blow job."[1]  *Id.* ¶ 17–18. Lawrence asked who had made the statements about her, and the resident gave a list of several other residents and a Christian Mission staff member.  *Id.* ¶ 19.

On October 24, 2008, the executive director of Christian Mission visited Lawrence in her office to discuss the rumors.  *Id.* ¶ 24.  The executive director showed Lawrence four statements signed by Christian Mission residents in which the authors alleged first hand knowledge that Lawrence was having sex with a Christian Mission resident.  *Id.* ¶ 23.  Lawrence denied the allegations, but felt as if the executive director believed the

---

[1]  The name of the office's owner is never disclosed in any of Plaintiff's documents.

signed statements instead of Lawrence's denials. *Id.* ¶ 26–28.   Lawrence subsequently tried to discuss the rumors with the executive director, but felt he did not make any efforts to stop their spread. *Id.* ¶ 32.   Lawrence sent numerous emails to the executive director explaining that the executive director was violating her civil rights and discriminating against her on the basis of sex by believing the statements of the male residents instead of believing her side of the story. *Id.* ¶ 35.

Lawrence's position at Christian Mission was terminated on December 9, 2008. *Id.* ¶ 30.   Christian Mission filled Lawrence's vacant position with a male counselor. *Id.* ¶ 36.   Lawrence filed suit against Christian Mission on February 18, 2010.   Her Amended Complaint contains six counts against Christian Mission: (1) creation of a hostile work environment in violation of Title VII; (2) retaliation in violation of Title VII; (3) discrimination on the basis of sex in violation of Title VII; (4) invasion of privacy; (5) defamation and slander, and (6) negligent supervision. *Id.*   Christian Mission has moved to dismiss all Counts except Count III, which alleges gender discrimination, pursuant to Fed. R. Civ. Pro. 12(b)(6) on the basis that Lawrence has not stated claims for which relief can be granted.   Lawrence has requested an opportunity to replead in the event that the Court finds her Amended Complaint insufficient.   (Doc. # 25).

## IV.  DISCUSSION

### A.  Hostile Work Environment:

In order to prove a claim for hostile work environment under 42 U.S.C. § 2000e-

2(a)(1) against her employer, a plaintiff must show:

> (1) that he or she belongs to a protected group; (2) that the employee has
> been subject to unwelcome sexual harassment . . . ; (3) that the harassment
> must have been based on the sex of the employee; (4) that the harassment
> was sufficiently severe or pervasive to alter the terms and conditions of
> employment and create a discriminatory abusive working environment; and
> (5) a basis for holding the employer liable.

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (*en banc*)

(quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999)).  It is

undisputed that Lawrence, as a woman, is a member of a protected class.  However,

Christian Mission has pointed out several factual deficiencies in Lawrence's hostile work

environment claim.  First, Christian Mission argues that Lawrence has not pled any facts

which demonstrate that the rumors of a heterosexual relationship between Lawrence and a

resident constitute harassment *because of* or *based on* her sex.  (Doc. # 23).  Second,

Christian Mission argues that Lawrence has failed to allege facts demonstrating that the

harassment she experienced was severe or pervasive enough to alter the terms and

conditions of her employment.  *Id.*  Third, Christian Mission argues that there is no basis

on which to hold Christian Mission liable for the conduct of its residents.  (*Id.*; Tr. 9–10).

In its brief, Christian Mission argues that Lawrence has not alleged any harassment at the

hands of her supervisors or quid pro quo harassment, and therefore that Christian Mission

cannot be held strictly liable for the alleged harassment.  (Doc. # 23).  At the August 18,

2010 hearing before this Court, Christian Mission also argued that its residents are not

employees or agents, and therefore that there is no basis for holding Christian Mission

vicariously liable for the alleged conduct.

### 1. Harassment "because of" sex

The Eleventh Circuit has long held that harassment inflicted without regard to sex is not actionable because the harassment is not *based on* sex. *Henson v. Dundee*, 682 F. 2d 897, 904 (11th Cir. 1996). In Henson, the Court acknowledged that

> [t]here may be cases in which a supervisor makes sexual overtures to workers of both sexes or where the conduct complained of is equally offense to male and female workers. In such cases, sexual harassment would not be based on sex because men and women are accorded like treatment . . . [and] the plaintiff would have no remedy under Title VII.

*Id.* Christian Mission argues that the Court has no legal basis to find that rumors of a heterosexual affair between Lawrence and a Christian Mission resident was harassment *based on* Lawrence's sex, because rumors of a heterosexual affair inherently victimize *both* sexes. (Doc. # 23). Lawrence argues in her response to Christian Mission's motion that even though such rumors are equally abusive to both men and women, the conduct is still actionable "if it has a different effect on women."[2] (Doc. # 25).

While "it is not inconceivable that someone might spread slanderous rumors in the workplace for the simple motivation that someone else was of a particular gender,"

---

[2] In support of her argument, Lawrence cites *Cross v. Dept. of Mental Health and Mental Retardation*, 49 F.3d 1490, 1504–05 (11th Cir. 1995). In Cross, the Circuit found that the district court did not err when it questioned witnesses about whether the supervisor's management style affected females differently than males. *Id.* However, Lawrence has not pled any facts which would indicate that she was affected differently by the rumors because of her sex.

Lawrence has not pled any facts that demonstrate that the rumors about her sexual relationship with a resident of Christian Mission were spread *because of* or were *based on* her gender. *Pasqua v. Metro. Ins. Co.*, 101 F.3d 514, 517 (7th Cir. 1996). Accordingly, Count One of Lawrence's Amended Complaint does not state a claim for relief under Title VII.

### 2. *Vicarious liability*

Christian Mission also argues that Lawrence has not pled any grounds upon which Christian Mission can be held liable for the conduct of its residents. An employer may be held vicariously liable for workplace harassment based on any of the following theories. First, an employer can be held strictly liable when a supervisor with immediate or successively higher authority over the plaintiff engages in harassment. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002). Second, an employer can be held vicariously liable when a supervisor engages in harassment that does not include an adverse employment action, although affirmative defenses are available in this situation. *See id.* Third, when the perpetrator of the harassment is a coworker rather than a supervisor, the employer can be held vicariously liable if it had actual knowledge of the harassment, or constructive knowledge due to the severity and pervasiveness of the harassment, and failed to take prompt remedial action. *Id.* The plaintiff bears the burden of proving the employer's liability. *See id.*

In this case, Lawrence has not alleged that any of her supervisors participated in

the spreading of these rumors.  Therefore, she is presumably relying on the third theory of

liability.  However, Lawrence has pled only one specific instance in which a Christian

Mission staff member—and presumably Lawrence's coworker—was alleged to have

repeated the rumors.[3]   According to the facts contained in the Amended Complaint, only

residents signed the written statements regarding the rumors.  Lawrence does not allege

that the residents are employees or agents of Christian Mission.[4]  She says only that the

residents "maintain jobs with the defendant."  (Doc. # 22).  Therefore, the bulk of

Lawrence's factual allegations pertain to conduct for which Christian Mission may or

may not be responsible.

     Whether or not the residents of Christian Mission are employees or agents of the

center may be a factual question that can only be answered completely after discovery has

been conducted in this case.  However, Lawrence is required to plead *some* facts giving

_____

     [3] Lawrence alleges in paragraph 73 of her Amended Complaint that "virtually the entire staff of the defendant continued to talk about the rumors constantly, even after plaintiff complained to the executive director."  (Doc. # 22).  However, Lawrence alleges no specific instances, other than in paragraph 19, of a staff member repeating or starting the rumors.  *Id.*  However, this statement is both vague and conclusory, and does not aid the Court's analysis.

     [4]Additionally, Lawrence filed an affidavit attached to her response to Christian Mission's Motion to Dismiss.  In that affidavit, Lawrence states that many of the residents at Christian Mission are "employed by the center, or are jobbed out by the center."  (Doc. #25 Ex. 1).  Lawrence also presents facts in her affidavit which indicate a greater involvement of Christian Mission staff in the spread of these rumors than is contained in her Amended Complaint.  However, this Court in its discretion will not consider her affidavit when ruling on this motion to dismiss.  Fed. R. Civ. Pro. 12(d) ("If on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to an not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

rise to a plausible legal ground for holding Christian Mission responsible for the conduct of its residents if Lawrence chooses to file a Second Amended Complaint with the Court.

At this time, the Court declines to analyze whether or not Lawrence has pled facts which give rise to a plausible claim that the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment.  Whether or nor Lawrence has alleged pervasive harassment depends on whether or not the conduct of the residents can be attributed to Christian Mission.

Because Lawrence has failed to plead facts giving rise to a plausible claim that Christian Mission is legally responsible for the conduct of its residents, in addition to the grounds indicated above, Christian Mission's Motion to Dismiss is due to be granted as to Lawrence's hostile work environment claim.

### B. Retaliation:

To establish a prima facie case of retaliation under Title VII, a plaintiff must show: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events.  *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).  To establish statutorily protected expression under Title VII, a plaintiff must show that she "had a good faith, reasonable belief that he employer was engaged in unlawful employment practices."  *Little v. United Techs.*, 101 F.3d 956, 960 (11th Cir. 1997).  Additionally, the "opposition must be

directed at an unlawful employment practice of the employer, not an act of discrimination by a private individual." *Brown v. Metro. Atlanta Rapid Transit Auth.*, 261 F. App'x 167, 174 (11th Cir. 2008) (quoting *Little v. United Techs.*, 101 F.3d at 959).

Christian Mission argues that Lawrence did not engage in a protected activity, and could not have reasonably believed she had engaged in a protected activity, when she complained to the executive director about the rumors.  (Doc. # 23).  Christian Mission argues first that the underlying conduct complained of was not pervasive enough to produce a hostile work environment, second that the conduct was not based upon Lawrence's sex, and third that the conduct could not be attributed to Christian Mission. *Id.*  Therefore, according to Christian Mission, Lawrence could not have reasonably believed that she was opposing an unlawful employment practice, did not engage in statutorily protected activity, and has not satisfied the elements of a claim for retaliation under Title VII.  *Id.*

Only a small portion of the activity Lawrence complained of can be attributed to a Christian Mission staff member.  (*See* Doc. # 22 ¶ 19).  Lawrence has failed to plead facts giving rise to a plausible inference that Christian Mission is legally responsible for its residents' conduct.  Again, Lawrence is strongly encouraged to plead facts which give rise to such an inference.

However, at this point, the Court must analyze Lawrence's claim for retaliation only on the basis of the alleged conduct of the Christian Mission staff member.  On the

basis of only that conduct, Lawrence still plausibly states a claim for retaliation—she experienced harassment that she reasonably believed was an unlawful employment practice, she complained about the harassment to her supervisor, and her employment with Christian Mission was subsequently terminated.  Lawrence also alleges that she was terminated within ninety days of giving the executive director notice of her complaints, giving rise to an inference of causality.  *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361 (11th Cir. 2007) (holding that while temporal proximity can alone establish a causal connection between protected activity and adverse employment action, a three to four month gap between the statutorily protected expression and the adverse employment action is too long to establish causality).

Because Lawrence has pled a plausible claim for relief under Title VII, Christian Mission's Motion to Dismiss is due to be denied as to Lawrence's retaliation claim.[5]

### C.  Invasion of Privacy:

Alabama law recognizes four distinct wrongs encompassed within the tort of invasion of privacy: (1) intrusion upon plaintiff's physical solitude or seclusion; (2)

---

[5]  While the parties fail to frame the dispute in this way, the Court finds that Lawrence has a claim for retaliation based upon the emails she sent to the executive director of Christian Mission.  These emails, sent before her termination, could constitute protected conduct—they address Christian Mission's failure to put an end to the rumors, a failure that Lawrence reasonably believed violated her civil rights.  Lawrence experienced an adverse employment action—termination—after sending the emails.  Additionally, the length of time between when she sent the emails and when she was terminated was less than 90 days, giving rise to an inference of causality based on temporal proximity.

publicity which violates ordinary decencies; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and (4) appropriation of some element of plaintiff's personality for commercial use. *Phillips v. Smalley Maint. Servs., Inc.*, 435 So. 2d 705, 708 (Ala. 1983).  In her complaint, Lawrence does not indicate which of these four wrongs she is alleging.  However, at the hearing before this Court on August 18, 2010, Lawrence's counsel indicated that she would be solely relying on the third branch of the tort—putting the plaintiff in a false, but not necessarily defamatory, position in the public eye.  (Tr. 18–19).  Therefore, this is the only branch of the tort that the Court will consider when ruling on this motion.

> Alabama law provides that:
>
> "one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if:
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed . . . .
>
> A false light claim does not require that the information made public be private; instead, the information made public must be false.

*Butler v. Argo*, 871 So. 2d 1, 12 (Ala. 2003).  Making information public includes communicating the information to the public at large, or to so many persons that the matter was substantially certain to become on of public knowledge. *Id.*

12

Christian Mission argues that Lawrence's invasion of privacy claim should be dismissed because Lawrence has not alleged facts showing that "the defendant's conduct was so outrageous that it caused the plaintiff mental suffering, shame, or humiliation." (Doc. # 23).   Lawrence alleges that a staff member and several residents of Christian Mission spread rumors the she was having a sexual relationship with one of her clients, which she alleges "affected her psychological well-being." (Doc. # 22 ¶ 38).   She also alleges that the rumors caused her to be "humiliated, scorned, ridiculed" and "suffer mental distress."  (*Id.* ¶ 71).   These facts are sufficient to establish that Lawrence experienced "mental suffering, shame, or humiliation" and to survive a motion to dismiss.[6]  For these reasons, Christian Mission's Motion to Dismiss is due to be denied as to Lawrence's claim for invasion of privacy.

### D.  Defamation and Slander:

To establish a prima facie case of defamation, the plaintiff must show that the defendant was at least negligent in publishing a false and defamatory statement to another concerning the plaintiff which is either actionable without having to prove special harm (actionable per se) or is actionable upon allegations and proof of special harm (actionable

---

[6] The Court notes that Lawrence did not specifically plead that any staff members or residents acted with reckless disregard for the truth when spreading the rumors.  She alleges only that the executive director believed the residents spreading the rumors over Lawrence's denials.   This factual allegation is likely insufficient to satisfy the second element of a false light claim.  However, Christian Mission has not raised this point as grounds for dismissal.

per quod).  *Gary v. Crouch*, 867 So. 2d 310, 315 (Ala. 2003).  An employer will be held liable for the torts of its employees only if "(1) the employee's acts are committed in furtherance of the business of the employer, (2) the employee's acts are within the line and scope of his employment; or (3) the employer participated in, authorized, or ratified the tortious acts."  *Armstrong v. Standard Furniture*, 197 Fed. App'x 830, 834 (11th Cir. 2006) (quoting *Ex parte Atmore Cmty. Hosp. v. Hayes*, 719 So.2d 1190, 1194 (Ala. 1998)).

Christian Mission argues that despite Lawrence's recitation of the elements of defamation in her complaint, she has not stated a claim upon which relief can be granted against Christian Mission.  Specifically, Lawrence has not alleged any facts which would permit the Court to find Christian Mission vicariously liable for the conduct of its residents.  Christian Mission also argues that Lawrence has failed to allege that Christian Mission or a Christian Mission employee published the defamatory statements.

In order for Lawrence's claim for defamation or libel to survive a motion to dismiss, she must have presented a plausible claim that the statements, either oral or written, and made either by the residents or the staff member, (1) were made in furtherance of the business of the employer, (2) within the line and scope of the speaker's/author's employment; or (3) that Christian Mission participated in, authorized, or ratified the tortious acts.  *See Armstrong*, 197 Fed. App'x at 834.

Lawrence has not pled any facts which would allow the Court to plausibly find that

14

any of the three situations described above are present in this case.  Accordingly, Christian Mission's Motion to Dismiss is due to be granted as to Lawrence's claim for defamation and slander.

### E.  Negligent Supervision

In order to state a claim for negligent supervision, a Plaintiff must allege (1) the employee committed a tort recognized under Alabama law; (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence; and (3) the employer failed to respond to this notice adequately.  *Edwards v. Hyundai Motor Mfg. Alabama, LLC*, 603 F. Supp. 2d 1136, 1357 (M.D. Ala. 2009). There must also be a causal connection between the alleged incompetence and the harm the plaintiff suffered.  *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 683 (Ala. 2001).

The only torts that could form the basis of Lawrence's negligent supervision claim are the state law claims alleged in the Amended Complaint—defamation and invasion of privacy.  Christian Mission has argued that since Lawrence has not adequately stated a claim for either defamation or invasion of privacy, her claim for negligent supervision must fail as well.  (Doc. # 23).  Christian Mission also argues that Lawrence has failed to allege both that any Christian Mission employee was incompetent and that there is a causal connection between the damages Lawrence suffered and the incompetence of an employee.

Lawrence has alleged that a Christian Mission staff member engaged in tortious behavior when he or she spread rumors about Lawrence's relationship with a client. (Doc. # 22 ¶ 19).[7]  Lawrence has alleged that this conduct amounts to both defamation and invasion of privacy.  While Lawrence has not properly alleged a claim for defamation against Christian Mission, she has alleged facts which would support a claim for defamation against the staff member.  Additionally, this Court has found that Lawrence has stated a claim for invasion of privacy.  (*See supra*).  Therefore, such tortious behavior can also form the basis of her negligent supervision claim.  By alleging that a Christian Mission staff member committed a tortious act, Lawrence has in essence alleged that the staff member was incompetent.

Lawrence has also alleged that the continued spread of the rumor caused her not only to be fired, but also to be humiliated and suffer mental distress.  As such, Lawrence has adequately pled a causal connection between the harm incurred and the incompetence of the staff member.  Because all of Christian Mission's arguments are unpersuasive, its Motion to Dismiss is due to be denied as to Lawrence's claim for negligent supervision.

## V.  CONCLUSION

Lawrence has requested an opportunity to replead if the Court finds that her

---

[7] The Court notes that again, the only conduct specifically alleged about a Christian Mission staff member found in Paragraph 19 of the Amended Complaint is that a staff member was the source of the rumors.  Therefore, that is the only conduct that can be considered when analyzing this claim.

Amended Complaint is defective in some way.  Lawrence's request is denied.  Her claim for hostile work environment pursuant to Title VII and her claim for defamation and slander are DISMISSED.

It is hereby ORDERED that Christian Mission's Motion to Dismiss (Doc. # 23) is GRANTED in part and DENIED in part in accordance with the foregoing opinion.

Done this the 31st day of January, 2011.


_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE